Donta Oliver presented significant evidence that while running away, he reasonably believed he was shooting at men who were chasing him with guns and were going to kill or seriously injure him or his girlfriend. These men had engaged in a pattern of escalating aggressive conduct throughout the evening. Minutes before Oliver fired the shots, five or six Jamaican gang members attacked him inside and outside a nightclub after one of them had harassed his girlfriend all evening. One of the gang members, Smith, pointed a gun at Oliver and a security guard during the attack causing the security guard to flee in fear for his life and the club owner to send Oliver back inside the club because he feared for Oliver's life. He fled out the club's back door, jumped off a balcony, and attempted to escape the gang by meeting up with his girlfriend in the parking lot of a nearby KFC restaurant. But in the meantime, the gang members overheard his girlfriend talking to him on the phone and followed her to the KFC in two cars and on foot. So Oliver briefly got into his girlfriend's car at the KFC, but he immediately fell out of the car when she pulled away in a panic before he was all the way in the car. Oliver then grabbed a gun from the car, told his girlfriend to leave, and continued running away from the men while his girlfriend drove ahead. He ran back toward the back of the Pollo Royal restaurant and only stopped running away for a moment when he turned around to fire at one of the gang members' cars when it approached him and his girlfriend's car. And none of the men who were chasing Oliver cooperated with police or testified at Oliver's sentencing. The government doesn't dispute that Oliver presented some evidence that he acted in self-defense or that the government bears the burden of disproving self-defense in this case. But the district court made at least four statements demonstrating that it was not applying this legal framework and that instead it allocated all of the burden to Oliver to prove self-defense. So first, even though Oliver, even before the sentencing hearing, had supplied the court with PSR objections and witness statements setting out the facts that supported his claim of self-defense, the district court said three times that the government had no burden to make the defense's case, and self-defense was the only case that Oliver was making. Next after hearing the testimony, and again consistent with its view that the government didn't bear any burden relating to self-defense, the court told defense counsel, you could have called the defendant to fill some gaps, but you didn't. That was your choice, so those gaps exist. And it went on to rule that a lack of evidence of other firearms at the scene tipped the scale in favor of applying the enhancements. Counsel, why does that, at least the discussion, I mean, I agree the discussion before the testimony is a bit confusing on the burden, but the discussion there is more general. It's on enhancements, and there's really not the granular discussion of self-defense. That does become the subject after the testimony, and the district court, in response to the comments that, you know, filling in gaps and him not testifying amounts to the shifting of the burden, says, I'm not shifting the burden, and what at least one reading seems to me could be that, you know, he just finds the evidence did not meet, was not sufficient to constitute self-defense. In other words, you know, you look at all the evidence, and it did not rise to that level in the district court's view. Yeah. It's, you know, I get your arguments that there's, you know, good facts that support a self-defense argument, but, you know, arguably there's facts on the other side, and the district court found they're not met. He never said the burden had shifted, and it seems like you're asking us to assume he did when that was, when he addressed that very issue and said, no, I'm not. The evidence just doesn't, in my view, rise to that level. I think that that doesn't distinguish this case from the Adepoju case, where the court actually articulated the correct standard, but then didn't apply it. But here, I think the court also articulated the wrong standard, and if you look at exactly what the court was saying in that exchange that occurred before the testimony, you know, he said it your defense is not consistent with the relevant conduct section. The government's responsible for proving relevant conduct, but is not responsible for your legal arguments, the factual basis for your legal arguments. So, I think that's a pretty clear statement that the district court misunderstood that once Oliver presented some evidence of self-defense, and that is a very low bar under North Carolina law, that the government then had to disprove self-defense. But in addition to that, when you look at what happened after the testimony was presented, the court mentioned Oliver's failure to put on evidence of what happened during what it referred to as an evidentiary gap, but it never mentioned the government's failure to recognize that there was an evidentiary gap, and it applied a presumption from that gap that went against Oliver instead of against the government. Could that have been read, well, I guess you can tell me, a lot of the evidence here was circumstantial, wasn't it, as to whether or not, who did what to whom? Might the district court have been talking about that, the fact that the evidence here is circumstantial and to the extent that it is, is because the defendant in this case didn't tell us exactly what happened. I think that in some aspect, in some sense, that was what the court was saying, but the problem is the court failed to recognize that the government also had access to witnesses and did not put them on. So, it was not up to the defendant to prove what happened in those moments before the shooting. Once he put on some evidence of self-defense, it was the government's burden to do that, and they couldn't because these supposed victims weren't cooperating. They were repeatedly telling false stories, and in the end, wouldn't cooperate with the government to testify, and I think it's reasonable to infer the reason they weren't cooperating is because they were trying to hide their own illegal conduct and using guns during that encounter. Under United States v. Adepoju, the district court's burden-shifting error requires reversal, and if anything, the burden-shifting is worse here than in Adepoju because here the court expressly placed the burden of proving self-defense on Oliver, and Adepoju the court actually stated the correct burden but then misapplied it, and here we actually have a mistaken, the court mistook the legal standard for applying the self-defense. Can I ask, so if your argument is correct, can we just look at the state of the evidence in the record and decide for ourselves whether or not the government met its burden on self-defense? Well, no, the court can't because it's the government's fault, and the judge that much less demonstrated it. Plus, that's not the standard that the court should apply in addressing harmless error. The question is whether the error had some effect on the outcome, and it certainly did, especially where the court recognized there was a gap in the evidence, and it laid that gap in the evidence at the defendant's feet instead of with the government, as it should have done. So the remedy in your case would be to send the case back and have the court reassess the self-defense evidence applying what you believe to be the proper burden? I think in this case that the correct remedy is to vacate it and remand it with instructions not to apply it because if the court looks at the correct legal framework of placing the burden on the government, it can see in the record that the government did not present evidence to contradict what Oliver said. Okay, so now I think you're agreeing with me then that we look at the evidence and decide whether or not it was enough, and if it wasn't, you win. If it was, the government wins. I just don't think that there is any scenario in which the government can win under the correct legal standard. That's what I'm trying to convey to the court. But even in addition to its legal error in allocating the burden of proof, the district court also made a clear factual error when it relied on its finding that there's no other evidence at the scene of any other firearms. And the only relevant factual question to consider here is was there evidence that Oliver's pursuers had firearms at the scene? And if the answer is yes, and it is, then the district court's finding there was no evidence of other firearms at the scene is clearly erroneous. Your argument there, and it may depend a little bit on what at the scene means. Yeah, I think you're right. You pointed already in your beginning remarks to testimony about a gun being pointed right outside the bar around the fight. There was some at least movement towards the parking area where after that fact. Yeah, granted, it's not crystal clear. But when he says there's no evidence of the firearms at the scene, is it not fair for us to interpret that the district court's talking about where the shots were being fired, as opposed to right outside the bar's door? I don't think so, because that's just not what the court said. I mean, if that's what the court meant, it should have said that at the scene. But there was evidence of other firearms at the scene. I mean, there's a circumstantial evidence that there were firearms at the bar and these same men followed him minutes later. You know, it's not a reasonable inference that they would have chased him and left firearms behind. And no, there's not a reasonable that's not a reasonable inference that they would have put the gun down. That really defies logic. So the court should vacate Oliver's sentence because of the district court's legal and factual errors in calculating the guideline range. And if it does that, it doesn't need to address Oliver's challenge to the supervised release conditions. But if the court does address those conditions, the court's errors require re-sentencing under Rogers and Singletary. The government concedes that the district court's written judgment conflicts with its oral rulings of sentencing. And under Rogers and Singletary, the proper remedy for that case because the district court here has recently overhauled its list of standard conditions. But counsel, can I appreciate you bringing that to our attention in the 28J letters. But before you get there, do Singletary, Rogers, do they deal with a situation like this where there's a variance between what is spoken at the sentencing hearing and the reduction of that to writing? We can see what the judge said at least about two of the special conditions at the sentencing hearing. They don't show up in writing. Are you saying that if that's the only issue we had, assume that was the only special condition we had, have to send that back just to conform the writing to the oral pronouncement of the special condition? No, I'm really not. I'm just saying that in this case, it makes sense to do that because of what the district court has done in this particular circumstance, which is to overhaul all of these conditions. And also, if the court does that, it prevents the court from needing to address the constitutionality of the risk reporting condition because the district court has already decided on its own to stop including that among the list of standard conditions. But would that mean any special conditions issued prior to the change need to be sent back? I don't think so. I think the court retains the discretion anyway to readdress those on the motion of the defendant in the first instance. The court can modify conditions at any time. I'm just saying in this particular case, there are a lot of problems with these supervised release conditions. The difference between the oral and the written judgment is only one of the problems. That only deals with two conditions. There are four conditions at issue here. The judge didn't explain any of them. He didn't respond to the defendant's objections. I'm just suggesting to the court that in light of all of the circumstances in this case, it makes the most sense just to vacate those and send it back and let the district court deal with it again. So, in conclusion, we ask the court to vacate all of our sentence and remand to the district court for a full resentencing. Judge Traxler, do you have any questions of Ms. Hester? No, thank you, Judge Diaz. Thank you, Ms. Hester. Mr. Enright? Thank you, Your Honor. May it please the court, Anthony Enright for the United States. Mr. Court, appropriately, found that Oliver possessed his firearm in connection with another offense when he used it to shoot Hakeem Smith in an occupied vehicle. I heard Ms. Hester speak about the sufficiency of the evidence, but I have to say, I understood the reply brief to disclaim any reliance on the sufficiency of the evidence and even criticize me for addressing the issue. So, I would suggest that to the extent the defense has introduced the sufficiency of the evidence to support the court's finding, the defense has abandoned that by specifically disclaiming it on page 1 and page 7 and 8 of the reply brief. That said, I'm happy to discuss that the evidence was certainly sufficient to allow the district court to find, by a preponderance of the evidence, that Oliver fired into that vehicle and was not being fired upon so as to act in self-defense. Oliver was on video shooting. There were multiple cameras. None of them showed the car. All of the shells recovered matched Oliver's gun. He got into Stone's car, retrieved the gun. She said she wanted to go away. He got out of the car, armed himself for a confrontation. The court could infer from that that he simply wanted to confront them and was acting on his own intent. And he falsely denied ever even being at the club. Not just falsely denied a firearm, but falsely denied to the police having anything to do with it. The court could infer from all of that that he wasn't acting in self-defense. But the issue the defense says is the only issue in the appeal. Did the court apply the correct standards? The background principle is, I think, something this court alluded to, which is you don't presume that the district court got it wrong. The law, Walden v. Arizona, you presume that the district court knows the law and applied the law correctly. And the court certainly didn't say anything about applying the burden incorrectly. Properly placed the burden on the United States from the beginning. There was a discussion before the evidence was presented about, because both of us had presented objections to the defense counsel, presented very detailed facts. There were these guys. They were all from the same area of Jamaica. They were called the Gaza Boys. They had messed around in another club a couple of weeks ago. And what the court says was, well, now you're proffering facts, and I understand that, but you have the burden to prove the factual basis for your objection. That's all the court was saying, and that's all the court did. He then made us go further. We agreed and acknowledged We had the burden to prove the enhancement, and the court placed it on us. And we know that because the court, A, because of the presumption, but B, because the court made us go first in presenting evidence. And we did present evidence. Counsel, did he make you all go first? I mean, it looked like there was that discussion and almost you said, yeah, we'll go. It was, to me, from reading the record, you know, a little unclear that the court made you go first. It seemed like that's what ended up happening almost voluntarily, which, you know, I get the presumption part. Without the presumption, it's a little bit more confusing to me, quite frankly. I think, Your Honor, characterization is fair. I mean, the court has discretion. Even if it doesn't place the burden of proof on one party, the court has discretion as to how evidence is presented at a sentencing. But just one factor to consider is the fact that we did go first. And I think it was ultimately, we agreed we had the burden, and then the court said, well, okay, put your evidence on it. So I think you can infer, certainly, that the court – you certainly can't infer from that. I don't think it would be appropriate to infer from that, that the court reversed the burden, that we all had agreed applied. I think it's also telling that when the court explained its ruling, it tallied the evidence that we had proved, that we had introduced, that it viewed as tending to exclude self-defense. It didn't say, obviously, he didn't act in self-defense, and all this stuff proves otherwise. The court tallied affirmatively. Let me ask you a question just a second. Certainly, Your Honor. In talking about the evidence that the judge recounted to you, he said the DNA directly connecting the gun to the defendant, and the gun being found at the defendant's house, I think is very, very compelling, and doesn't support a claim of self-defense. Would you explain that rationale to me, please? The way I understand it, Your Honor – Finding the gun at the defendant's house disproved self-defense. Your Honor, I think it's that information, coupled with Stone's testimony, that she didn't know it was there, and the testimony from Stewart, that the defendant denied having anything to do with the gun, not having anything to do with being at the scene at all. He denied being at the club. He denied having anything to do with it. And the fact that they found a gun with his DNA, he didn't call the police, say, hey, I shot this guy, here's the gun. He hid it in his house, is a fact that the court considered as tending to exclude self-defense, because if it were self-defense, what we argued was he should have called 911, said, hey, these guys were shooting at me, and I acted perfectly lawfully in shooting them. Instead, when police talked to him affirmatively, he said, I don't know anything about the club. If my girlfriend was there, she must have been cheating on me, is what he said. And that, I think the court could consider as one factor among several, tending to exclude self-defense. But the court also found that he armed himself at the scene, that video showed, and there was multiple videos, but they only showed Oliver shooting. That he unloaded the gun. He didn't just fire one shot, he fired five. That all the shell casings pointed to Oliver. And that Oliver, as I mentioned, tried to prevent the authorities from finding the gun. And when the court said, there are gaps in the evidence, that was in response to an accusation by defense counsel that we had reversed the burden of proof. And all we said was, your honor, the defendant didn't testify, so this court has to rely on the other evidence, that is the circumstantial evidence. And the court said, well, how does that reverse the burden of proof? And that's when the defense said, well, they didn't even call the victim. And the court said, I don't understand how that's reversing the burden of proof. It just means there's this gap in the evidence. And I think the defense even conceded. He's talking about a gap in, perhaps, direct testimony. What the court had to do was rely on circumstantial evidence to make its finding. That doesn't suggest that the court applied the wrong burden when evaluating that evidence. I think it's simply an accurate statement of fact. One that the defense attorney didn't take issue with. He actually said, I agree with that, your honor, as far as it goes, and then moved on to something else, didn't accuse the court. In fact, I don't think the defendant ever accused the court of reversing the burden of proof before the district court. The court said, of course, there's no other evidence at the scene of other firearms. There's no other evidence at the scene, and that was in the context of a discussion of the shell casings and the video, which is evidence at the scene. So I think it's an accurate statement. There was no other evidence at the scene of firearms. There was some testimony that Smith had a gun. I don't believe there's any evidence. There's no evidence, certainly not in the testimony or even in the defense memoranda, that Oliver ever saw Smith with a gun. But the fact that there was some evidence that Smith had a gun a few blocks away at the tropics, is just not relevant evidence at all, because both parties agreed, and the district court explicitly said a couple times, the standard focuses on the defendant's state of mind. Did he know he was facing an immediate threat of death or serious bodily injury, is the standard for self-defense. And there was no evidence that suggested, in the light of the evidence that we introduced showing that he was the only shooter, there was no evidence suggesting he was responding to a threat posed, an immediate threat posed by Smith with a gun. So I don't think there's anything wrong with that statement. When the bouncer, the security guard, fled, what do you think he was afraid of? That he had nothing to fear himself? No, you're right. He did testify that someone had a gun. But he didn't testify that Smith had a gun. And he stated, he wrote in the memorandum that the defense didn't introduce at sentencing, but had submitted to the probation office earlier, he said that someone had actually pointed a gun at Oliver, but Akolatse said, Oliver never pointed a gun at anybody, or I'm sorry, Smith never pointed a gun at anybody. So not only is there no evidence that Smith pointed a gun at Oliver, there's affirmative evidence that he did not. That was evidence that was actually introduced by the defense. But I don't think anyone disputes that there's evidence that somebody had a gun in that parking lot, which was probably enough to make the security guard want to leave. It's just the security guard didn't say anything about Smith and Oliver, or even Stella and Oliver. The evidence is that Stella tried to get a gun from Brian's car, and Brian refused to let him do it. So there's no evidence that Stella was armed with anything other than a beer bottle, which isn't sufficient to create deadly force, the kind that justifies shooting somebody, can justify shooting somebody. I do want to turn, if the court has, I'm happy to answer questions about the enhancement, but if not, I'd like to turn to the supervised release conditions. The court appropriately imposed conditions 5, 8, 12, and 16, I think they are. The court explained that its entire sentence, unlike, say, McMiller, the court didn't say, here's the sentence I'm imposing, here's the reason. The court basically did it in three parts. It said, here are the considerations for the entire sentence. I want to make sure I'm deterring particularly people who possess firearms illegally and furthering all of the 3553A factors, and I'll state a sentence, no greater than necessary to do that. Then he talked about prison. Then the court talked about supervised release. And then the court responded to each specific objection. Condition 5, which is about approving a place, the probation officer's approving the place the defendant lives. He said it's a, the defense counsel argued it's an improper delegation of authority, and what the court said was, I don't have a constitutional or statutory problem with that. And that's a sufficient explanation because this court's review of that issue is de novo. Improper delegation is de novo. There's no difference in the words of this court in Comer to the district court's statement. So you know the district court considered the argument, and you know the court didn't believe it to be unconstitutional. So if there were a substantive challenge to that condition, which there's not in this case, but if there were, this court would be fully equipped to determine whether, indeed, that condition violates Article III as an impermissible delegation of authority. Condition 8, which requires him to obtain permission before associating with felons, the court said it's too broad because the probation officer can just come back if he finds him associating with a dangerous person and take it before the district court itself and have the district court modify the conditions. And what the court said was, no, the reason we have these conditions is so the probation officer doesn't have to bring this to court. In other words, the court thought it was fine that the probation officer exercised this discretion. Again, if this court wanted to evaluate the substance of that analysis, it could. There's enough information to enable appellate review, which is the standard for the explanation of a sentence under the Supreme Court's decision in Chavez-Mesa and Rita and several other decisions. And then 12, that one, the court, again, it was a vagueness and non-delegation question. The court said the court is overruling the defense objection. Obviously didn't believe it was unconstitutional. That's sufficient for this court to do so. And we know that because the defense actually raised the constitutional arguments. So the court can evaluate it. It's not vague. It has all of the features that this court has said make a condition not vague in Comer and in Van Donk. It has a common sense understanding. Risk was ordinarily understood to mean the risk associated with your criminal history and your crime. I'm sorry. No, go ahead. I mean, on that one, I mean, my reading of it was the only explanation he gave in overruling the objection was that Judge Bell had done it. I don't think so, Your Honor. The court did mention that, and I don't think it's particular. I know that was going through a lot of them, and in some of the issues, that was one of many issues. But are we talking about 12, the risk? Risk notification, Your Honor. I think the court did mention that, but the court also said I'm overruling the defense objection. I do think the defense attorney, unfortunately, I don't have it. I didn't write it down, but I think the defense attorney had actually said it's the same objection I made earlier. So when the court said I don't have a non-delegation problem, it was perfectly fair to say, okay, I don't have this problem here either, and just say I'm overruling the objection. But the point is the standard only requires this court to show that it considered the objection and provide enough explanation to enable appellate review. The amount of explanation varies depending on the condition. And when the condition, when the only argument is a pure question of law, one where the district court's opinion really doesn't matter because it's purely de novo. This court said in Comer, no deference to the district court whatsoever. The court doesn't have to say much. The court just has to give this court enough to know that it heard the objection and considered it. And it rejected it on these constitutional grounds. If this court thinks it's unconstitutional, then it vacates the condition. If this court doesn't think it's unconstitutional, which is purely within this court's province, then it upholds the condition. That's enough information for this court to complete its appellate review of that condition. And what's your argument with respect to the constitutionality of 12? It has all of the features that make it not vague. The defendant has the ability to clarify the meaning by its own inquiry, and especially in this case because you're talking about just notification of risk. So either the probation office says to someone directly, look, maybe before you hire him at this gun shop, you should know he's prohibited from possessing firearms, something like that, or tells him what he needs to notify someone. So there's no danger that he's going to unwittingly violate it, which is another factor that applies because really there's not any risk of that in any event because you can't be prosecuted for violating a condition you don't know about. You can't be punished for inadvertent violations in the words of the court. And, of course, the defendant can bring an as-applied challenge in the future if he's ever somehow accused of violating this condition. Under circumstances, it would be vague. Those are the circumstances. This court held in Van Donk and in Comer make a condition not vague. Even if there's some question about gray areas or what conduct it covers at the margins, there's no risk of a Fifth Amendment violation here because of it. The second part of it is the implementation. I guess maybe your answer is it has to be this way or otherwise it would be unworkable. But isn't this entirely within, with respect to 12, within the discretion of the probation officer with respect to its application to this defendant? It's within the discretion of the probation officer to notify someone about a risk, but it's not within the discretion of the probation officer to punish him for violating the condition, which is a critical factor when talking about the second argument, which I think your question relates to, which is is it an unconstitutional delegation. I think the first step on that is we're talking about providing notice. That's the only thing this condition requires, and that's obviously not something specifically reserved to the district judge as opposed to court personnel. Court personnel can give notice consistent with the Constitution. But beyond that, the district court established the core principle. We're only talking about risks and whether that's construed narrowly or broadly. It's a principle established by the district court, not by the probation officer. And then the court retains ultimate discretion for, ultimate responsibility for deciding whether the defendant violated its terms. And this court has upheld far broader delegations. In Hamilton, it was pretty much a blanket ban on the Internet. In Comer, it was a ban on social networking accounts. In Van Donk, it was a treatment ban on pornography. Let me ask you a question. Isn't 12 no longer a standard condition? It's no longer a standard condition in the Western District of North Carolina after October 1st, 2021. So is it being used outside or as a non-mandatory condition? Well, the court continues to have discretion to impose it in any individual case because the standing order doesn't preclude the court from doing that. The standing order just basically serves as language the court uses for imposing standard conditions. The court, of course, has to make an individualized determination in every case. But as far as I know, the court does not ordinarily impose this condition anymore. That said, I don't think that affects the constitutionality of it or the propriety of the court's explanation in this case. So where was the individualized determination with respect to this defendant that condition 12 was an appropriate condition of supervision? Well, the court chose to impose the standard conditions. And that provides some indicia of an individualized determination. And the court also went through each one of these conditions and modified several of them in response to defense objections. And that had nothing to do with what other district judges had said. The court revised, for example, 9 and revised 13, not because there's nothing in the record suggesting that was to mirror some other district judge's thing. That was simply in response to the particular circumstance. When I was preparing for this case, I was struggling to figure out exactly how 12 would apply in this context of someone who's accused of firing a weapon and being a felon and all of that. And I guess you came up with an example. If he were to be seeking employment in a gun shop, the probation officer might well be appropriate for the probation officer to tell the defendant that he needed to alert that gun shop owner of his prior conviction. Yes, Your Honor, I do think that highlights a point, though. This is not a particularly onerous condition. It doesn't limit the defendant from doing practically anything other than perhaps not disclosing that information if required to do so. But it doesn't limit his ability to get a job. It doesn't limit his freedom on a daily basis. It's a very, very mild intrusion on the defendant's liberty interest. And the thing to keep in mind always when evaluating these conditions is it's a defendant on supervision. These are his active sentences. He's serving an active sentence, and it's for three years in this case. Condition 12 and 16, I see my time is almost up. I just want to mention everyone has agreed it's a clerical error. The defendant has not disputed that there's a clerical error in those. A clerical error can be corrected under Rule 36. There's not any kind of dispute about what the scope should be. We've agreed to the very language that appears in the defendant's brief, and that's currently before the district court. So it does not require resentencing. Thank you for your time. Thank you, Mr. Enright. Ms. Hester? Thank you, Your Honor. With respect to the government's point about sufficiency of the evidence, in our briefs when we address that question, it appeared to us from reading the government's brief that he was only bringing that up in the context of the court's clear factual error. But in the context of the burden shifting, we did say that if it's not a de novo review, that this would be clear error if the district court had applied it. So we did not waive anything there. If anything, it's a misunderstanding of what the government was trying to say in its brief in relation to the district court's factual finding. As far as the government's assertion that the defendant wanted to confront these victims, I think that you have to look at the videos to see why that's just simply not a reasonable interpretation of the evidence. A lot of this evidence came from the videos. One is the video in the KFC drive-thru lane where you can see the defendant falling out of the car. He never gets back in it. He just gets close to it, and that, we believe, is the point where he grabs the gun. We know from the government's actual statement of relevant conduct that's in the PSR, when Oliver finally did get in the girlfriend's car, the security guard at Dirty South overheard him saying to her, why didn't you leave? I told you to go. So it's apparent that at the point where he grabs the gun, he's telling her to get out of there. Be safe. Get out of here. Because he thought they were after him, and he wanted her to be safe. Another critical piece of evidence, which unfortunately I overlooked during the briefing, is the videos from the Cash America pawn shop. That is the building that is actually right next to the Tropics nightclub. And if the court looks at the November 1st outside cameras, Cam 2, you actually can see on there the girlfriend's white car parked on the curb and the activity that's happening in the parking lot of the Tropics nightclub. And that gives a real sense of how compressed this time frame was. Because from the time she leaves that parking lot, you can see the car that pursues her is, the headlights are shining on her car. They are watching her. She is on the phone with the defendant, trying to figure out how to meet him. And as soon as she pulls out, you see two men run on foot in the direction that she's gone. And this car pulls behind her, or follows her, and then a second car follows her. So this whole time she's on the phone, communicating with him. There was no point where he stopped fleeing. He was running this whole time, just trying to figure out how to get out of there. And the government says he should have gotten in her car and left, but that didn't make sense either because they were being chased by two cars, and they reasonably believed that the men in these cars had guns. So that would not have assured their safety anyway. Mr. Oliver took the only action that he reasonably believed was available to him at that point to save himself and his girlfriend from either death or serious bodily injury from these aggressive men who they believed had guns and were chasing them. With respect to the supervised release conditions, I think what the government hasn't answered is the fact that at the beginning of the discussion about supervised release conditions, Mr. Oliver reminded the court that it had an obligation to explain, specific to Mr. Oliver, why these conditions applied to him. And with respect to the ones that we are challenging on appeal, the court just never did that. It rejected his argument that the probation officer could just come back to court on the felon association, but it never addressed his argument that that shouldn't even apply to him in the first place. And it never gave a reason why the risk notification condition should apply to him at all. It never explained, other than it just disagreed, why the search condition should apply to someone who's not a sex offender. The court just simply didn't do what this court requires, which is to give reasons based on the facts of this particular case, why these conditions satisfied the statutory requirements and didn't constrict his freedom any more than reasonably necessary. Thank you. Thank you, Ms. Hester. Mr. Enright, Ms. Hester, thank you both for your arguments this afternoon. The case has been well presented and we very much appreciate your arguments. Thank you very much. Thank you.
judges: Albert Diaz, A. Marvin Quattlebaum Jr., William B. Traxler Jr.